Good morning, Your Honor. May it please the Court, my name is Craig Harbaugh. I'm the attorney for the appellant, Mr. Amorosino. I would like to reserve two minutes for rebuttal. Sure, just keep track of your time if you would. I will, Your Honor. Justice must satisfy the appearance of justice. Regardless of how this Court views whether justice occurred in this case, clearly the appearance of justice was not satisfying. The magistrate judge abused his discretion for failing to recuse himself for three reasons. First, the judge commented on the severity of the charges and indicated that they should be punished severely. Second, the judge invoked his experience as a former prosecutor, suggesting that he would not have dismissed the charges. And third, the judge signaled that he would rule in the government's favor on the issue of knowledge regarding the second false statement if the case went forward. Well, let's sort of look at the way that this actually happened. You have two, what, certified law students that are actually handling this, right? And then you have the supervising lawyers, correct? So it's a bench trial, number one, right? It is a bench trial. And then you have the, what it looks like that the public defender's office sandbags the DA going into it. They don't comply with discovery. They pop something right at the last minute. So the DA is caught a little bit flat-footed and says, well, gosh, if I would have known that. Now, unfortunately, I'm really sorry. We've got everyone here. I'm going to dismiss. Now, the court, albeit not having what they're sort of, unless there would be a public injustice, is that the, what's the standard for dismissal? Well, Your Honor, regarding leave of the court under Rule 48, this court has never explicitly adopted any standard. But in the event a judge can deny a motion to dismiss where the defendant consents, the standard is against the public interest. And this court has never found that that standard has been met. All right. Okay. So you come in. I've set the standard that you come in. We've got this motion to dismiss. And the court then seems somewhat troubled that your client seems to, is advised that there's other instances where your client has allegedly impersonated an officer. So the court's concerned. The court didn't say it wasn't going to dismiss and may appear that it was going to. But why isn't the court allowed to ask, well, so you've got all the witnesses here. Everyone's ready to go. Tell me why you're doing this. Because if there is some sort of standard in some instance where the court may not grant that, why can't the court ask that question? Your Honor, if that's simply what the judge did, then that might be adequate. The government has attempted to clarify or attempted to characterize the judge's comments as simply seeking clarification. I would point out to the court that the prosecutor provided a very detailed and lengthy statement as to why she was dismissing the charges in this case. First, I would point out just for the purpose of the record, there was no allegation of a discovery violation. When the prosecutor indicated that she as a courtesy provides discovery and would expect the same courtesy to her, there was no discovery violation. Well, and the public defender there said, I would have turned it over. I'm sorry, this is a law student. He didn't know. You know, I don't think. But that was then, this is now. I mean, she apparently was willing to go forward. She didn't ask for a continuance or ask to have the late discovered matter precluded or anything like that. Very true, Your Honor. And she also, she was in a better position to evaluate the evidence in this case than Judge Johnson, who never saw the evidence. And I would point out that the prosecutor didn't simply cavalierly make the statement that she was going to dismiss. She made it very clear that she felt his conduct was serious. She was concerned about his prior misconduct, but she concluded that a public admonition to Mr. Amarsino was sufficient to address the government's interest. I would also point out that the government, after the judge pressed the prosecutor further, the prosecutor again explained her position and stated that even if it was a lie, that his, a lie about his volunteer status, she stated in his mind it might not have been. So she concluded that the knowledge element might not have been met or whether she felt it was, whether she felt the evidence was inadequate or whether the government's interests were not met by going forward. Those were clearly valid reasons why a prosecutor can dismiss. Did the court actually deny the motion? No, Your Honor. The court did not explicitly deny the motion, but the judge's statements made it very clear that the judge was holding the matter in abeyance and made repeated comments to the prosecutor indicating that she should still be considering the matter. I would point out after the prosecutor gave her second statement indicating that she moved to dismiss, the judge purported to give the defense counsel an opportunity to respond. The judge interrupted defense counsel and stated while the government, while the prosecutor may be deciding whether to dismiss the charges, the prosecutor never once intimated that she was still considering the decision. Then the judge went into the severity of the charges. Now, both the district court judge and the government points out that the judge couched his comments in conditional terms. But regardless of whether they were conditional, they were clearly influential on the prosecutor. Okay, Judge King said, so what? Not all influence is undue. The judge is entitled to comment on these things. What's your answer to that? Your Honor, whether the judge is entitled to comment on the severity of the charges in a case such as this, in the unique circumstances of this case, it was improper for the judge ultimately to sit as the sole trier of fact. Let me ask you about that. Judge King also said that even assuming he should have recused himself, harmless error applies to this. Your Honor, that is actually under the statute 455, that the harmless error standard applies. The case that we had cited, and I probably...  17 U.S.C. 455, harmless error analysis, and that's... And I'm going to botch the Supreme Court case, Lujanberg case. But even if that's... Well, the standard for the constitutional violation is actually in Toomey v. Ohio, and that's cited in our briefs. Although I apologize not for the proposition that it is structural error when a judge either impliedly or actual bias sits in judgment of the case. So you say there's a case that says it's structural error? Toomey v. Ohio, and it is cited in our briefs, Your Honor. But even if the harmless error... Well, let me ask you this, though. A bench trial is different than a jury trial, for all of those of us that have done lots of those. And in a bench trial, oftentimes judges will rule on motions in limine. And sometimes those, for example, go whether a prior would be admissible to impeach someone or if you're going to allow prior acts to be considered in terms of as they relate to what person's charged with, particularly on sex crimes. And so you hear it all. And then, say, you deny the motion. So by your argument, every time the judge hears these things, then you can't presume that they could ever be fair and decide the case based on the evidence that they hear. And we know that that's not the case. It is, Your Honor. If I could just answer this question briefly. Answer it quickly and then we'll... Your Honor, the key distinction between those motions in limine is that this was a unique prosecutorial function. The decision whether and what to charge resides in the executive branch. And where a judge insinuates himself in that process, invokes his experience as a prosecutor, comments on the severity of the charges, and then indicates that he would rule in the prosecution's favor, this is wholly outside the realm of simply a motion to suppress or dealing with prior bad acts. Thank you. Thank you very much. Good morning. Good morning. Jean-Claude Andre on behalf of the United States. I think as the Court has already focused on, particularly Judge Callahan, Rule 48's with leave of court language has to mean something. Certainly this Court, other courts of appeals and the Supreme Court have all intimated that a court's discretion under Rule 48's leave of court provision is limited. But the government believes that in this case the limited colloquy between Judge Johnson, Mr. Navarro, and Ms. McCaslin was entirely appropriate in light of the discretion that the court still does have. Well, why can't you read it the other way in terms of that the judge says, well, when I was a prosecutor, I wouldn't have done that, wink, wink. It doesn't sound like, to me it doesn't sound like you have a problem, the problem that you think, and, you know, that you've got all, you've, you know, admittedly this is not the case of the century, all right, and it's generally not even what we see in federal court, but I guess it happened in a park. So you've got two law students trying it, and then I'm going to, you know, I don't know how experienced the deputy public defender was in the AUSA or whatever, but, you know, this is not a capital case, so as far as that. So when they say, well, I don't see a problem with your evidence. I wouldn't have dismissed it when I was a prosecutor. Why isn't that, you know, wink, wink, you're fine? Well, certainly that comment was gratuitous on the part of Judge Johnson, and I doubt we would be here. Well, it was more than gratuitous. I mean, obviously. Changed her mind. Changed the prosecutor's mind. Yes, the government conceded in its district court filing that it influenced the decision. But the government's position is that there's nothing improper with a court engaging in a dialogue with the government or, in fact, this is an important point, in this case, the comment that as a former prosecutor I don't think I would have moved to dismiss, that comment was not directed at Ms. McCasland. Judge Johnson was not staring her down. He was talking to Angel Navarro, the supervising deputy public defender. How do you think that appears to the defendant to be sitting here listening to the judge tell the prosecutor don't dismiss the case, I wouldn't do it, I think it's a terrible case, and then he's the judge who hears the case. Don't you think that makes a bad impression? I imagine that it could have scared the defendant a little bit when he heard that, but at the same time. Well, it scared him enough to make a motion to recuse. But if the standard is a reasonable person would have cause to doubt the impartiality of the judge, if that's the standard, you know, if you're the defendant and you hear the judge saying that's not what I would do and I'd go forward and I used to be a prosecutor and, you know, does in fact talk the prosecutor out of it, why wouldn't a reasonable person think that would cast doubt on the impartiality of the judge? Well, because of the context here. If you look at the record, what happened was the first words out of Judge Johnson's mouth were, I'm not sure I'm understanding where this video changes the government's contention. And then again, two pages later, and that's on 37 was the first instance of the record and 39, the second instance, he again said, I'm not understanding where this video changes the government's contention. So while you do have this gratuitous comment in there, it was after the judge had twice made comments that he didn't understand. Well, but he's, but he is, he's, the comments are integral in terms of discussing the weight of the evidence and the force of the evidence. I think in terms of that I know why judges ask these questions because I've asked in the sense that when you get a young prosecutor coming in saying they're going to dismiss something and you have this standard over here, you know what the newspaper's going to say is Judge Callahan dismissed this charge. And then when it turns out that Judge Callahan, even though it was the prosecutor made the motion, the judge had very little discretion and granted the motion. It doesn't come out that way. So you don't really want to dismiss charges without knowing whether you're dismissing it against an ax murderer or it's the, you know, even though it happened in the park, if you recall, Yosemite killings were a guy that worked in the park, too. So the judges, you know, I think the nature of the colloquy is supposed to be you want to make sure that there's not some sort of egregious danger to the public that's going on or that, you know, that it's based on not necessarily, well, tell me what your evidence is and I'll give you my view of how I weigh the evidence. In this case, and I'm not here to malign my colleague, Ms. McCaslin, but, I mean, I fully agree with Judge Johnson that based on what she stated when she moved to dismiss, and granted it went on for two pages, it was in clear language, it was detailed as Mr. Harbaugh pointed out. But it's not really rational why a 22-year-old videotape would be so exculpatory that the government would move to dismiss charges. Well, the issue, the issue is, you know, this is her prosecutorial discretion. She may feel sorry for the guy. Well, I mean, that's her judgment. It is. But at the same time, if Rule 48 does allow a court to police the motives of the government's moving to dismiss to make sure that there's not a basis that's contrary to public interest behind the motion, then the court has to be able to engage in limited colloquy. Certainly the court can do that when the motion to dismiss is accompanied by no explanation, which is, frankly, the way we do it in most cases. It's done with a one-page written motion. Or in a case like this where the explanation comes out, but it doesn't make a lot of sense. It's not logical. And so the court can, I mean, there's no evidence in the record that Judge Johnson thought that Ms. McCaslin's explanation was pretextual. But you can imagine a situation where a prosecutor stands up and goes on and on for two minutes talking about why she wants to dismiss. But if the court says, that doesn't sound right, what's really going on here? And I think that when articulating a rule as to how far a court can go, what Judge Johnson did here is really no different. He was trying to get at why the government would view this evidence as so exculpatory that it would then move to dismiss. This is not a case where we had a videotape that was produced. Is it significant that there's two law students that are trying this case? I think it is for this point. And actually, I don't believe it was two law students. Mr. Hawbar, I believe, was representing Mr. Maracino, and he was a new public defender at the time. The government had a law student that was going to try the case. What is important is, I think, it shows that Judge Johnson takes pride in running his courtroom in a casual, conversational, friendly way. He likes to help educate young lawyers, help them hone their craft. In fact, he stated that, and I'm not proffering things outside the record. Is it a discovery violation if you hand over exculpatory evidence right at trial and you know you're going to put that evidence in? I don't believe it is, no. I mean, Ms. McCaslin couched it as a discovery violation. I think you picked up on the point correctly earlier that it's not necessarily a discovery violation, but it certainly defied the common practices between our two offices, and Mr. Hawbar, therefore, appropriately apologized for it. Well, in state court, though, you would have to turn over something like that. You don't have to in federal court. You can just give the cert. I mean, it was great when state public defenders could surprise DAs. I mean, it was awful being a DA waiting to see what was going to be sprung on you. I don't know definitively, but given that I see all kinds of in-camera filings by the defense as to what witnesses they want to put on, I imagine that the defense can stand back the government. I mean, she doesn't have to object to a late disclosure. She can if she wishes, and she could also waive the objection, I suppose, if she doesn't think it's. That's right. That's right. But either way, I think, and again, Judge Callahan, you picked up on this earlier, what's important is that everyone was ready for trial in this case. They were all ready to go. Now there's this eleventh-hour discovery, and Ms. McCaslin made an initial hasty decision, which, frankly, was somewhat illogical, didn't make a lot of sense. And then Judge Johnson just tried to probe that. He did not deny a motion. He did not state that he was going to deny the motion and dismiss, like in the Jacobo Zavala case out of the Eighth Circuit. Instead, he engaged in this colloquy with Ms. McCaslin and the public defender, and then Ms. McCaslin withdrew the motion. And under those circumstances, we don't think that the Court's conduct was inappropriate. There are two themes that I see kind of animating the defense's position here. One is that the Court is severely constrained and has to basically sit idly by and just rule on an objection reflexively once it's posed to the Court. The other is that the executive, notwithstanding all the discretion we have to charge, doesn't have the strength and independence to reconsider its position in light of a discussion with the Court. Neither one of those propositions can be right. In fact, in the former context, this Court has repeatedly said that, you know, courts don't have to sit idly by. In fact, that's why we filed a FRAP 28-J letter on Lopez Martinez where the trial judge, outside the presence of the jury, told the prosecutor, here's how I would question this witness and here's something that you haven't explored and I don't want this defendant to be convicted on speculation but on evidence. It's really no different than what we have here. We have a judge just trying to air out some problems with what the government has been saying. And if it's not inappropriate for a court to suggest a line of questioning to a prosecutor, and to get back to your point, Judge Silverman, I imagine that would make a defendant feel very uncomfortable as well if the defendant saw a court doing that. It seems to me there's a difference between a judge developing the facts, especially when he or she is the fact finder, and on the other hand, I don't hear the judge telling the prosecutor how to exercise the prosecutor's discretion. And that's what happened here. Well, here you have the judge again saying, using tenet terms, I don't think I would have moved to dismiss as former prosecutor. But the court also, in the same breath, recognized that the government does have the discretion to move to dismiss. The court never intimated that it was denying the motion. It never said it would deny the motion. The court didn't look at Ms. McCaslin and say, you know, only a silly assistant United States attorney would move to dismiss. And in fact, I'm going to call the U.S. attorney and tell him that I think you're silly. None of that happened here. We just had a dialogue where Judge Johnson offered one gratuitous comment, amusing, but it cannot be so overbearing that it overcame the independence of the executive and its ability to reconsider its position, and at the same time to create such an appearance of impropriety and bias that recusal was required. Thank you very much, Mr. Andre. Harbaugh, you've got about a minute and change left. Thank you, Judge Silverman. I would like to address briefly the government characterizes the judge's comments as simply discussion and dialogue. And even assuming that the judge was simply seeking clarification, as Judge Silverman pointed out, this is what a reasonable person, how they would view the judge's comments in this case. And as the Supreme Court has noted, this is not a reasonable judge standard. This is a societal standard, viewing this from the outside, and whether a society that's, frankly, suspicious of judges. And here we have a judge made several comments. But they're less suspicious of us than they are of Congress, people in Congress. So I want to put us on a little higher level. Very true, Judge Callahan. Finally, I would just like to address Lopez Martinez has no bearing on this case. That was a jury trial. And the court, this court, concluded that the record suggests that the trial judge's intent was to protect Lopez Martinez and the fair trial process. And clearly, Judge Hodgson was not protecting Mr. Armacino. Thank you. Thank you. Thank you. I thought both of you did an excellent job advocating your positions. Here, here, here. Thank you, Mr. Andre. Mr. Armacino, the case just argued is submitted. Hoffman v. May and Seven Arts v. Jones Film are submitted on the briefs at this time.
judges: Hall, Silverman, Callahan